UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER HOLLAND, et al.,<br>　　　　Plaintiffs,<br>　v.<br>THE RELATED COMPANIES, L.P<br>　　　　Defendant. | Case No. 16-cv-03989-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 13 |

Now before the Court for consideration is the motion to dismiss filed by Defendant The Related Companies, L.P. ("Related"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for September 16, 2016, GRANTS Defendants' motion, and GRANTS Plaintiffs leave to amend.

**BACKGROUND**

Plaintiffs, Peter and Kristin Holland, are former tenants of Unit 7C in the Paramount Apartment Complex. Mr. Holland is a veteran who suffers from Post-Traumatic Stress Disorder ("PTSD"). In approximately March 2015, The Paramount underwent renovations, and Mr. Holland complained about the construction related noise. Plaintiffs asked for an accommodation because of the construction noise. The parties engaged in discussions regarding Plaintiffs' request but were unable to reach an agreement. (*See* Compl. ¶¶ 15-26.)

This dispute is related to another case pending before this Court, *Holland v. The Related Companies, Inc., et al.,* 15-cv-3220-JSW ("*Holland I*"). The facts underyling the dispute in this case are the same facts alleged in *Holland I*. (*Compare* Compl. ¶¶ 15-35 with (Dkt Nos. 13-1 and

13-2, Request for Judicial Notice and Ex. A (*Holland I* Complaint ¶¶ 9-21).)[1]

In *Holland I,* Plaintiffs asserted violations of (1) the federal Fair Housing Amendments Act, 42 U.S.C. sections 3601, *et seq.* (the "FHAA Claim"); (2) California's Fair Employment and Housing Act, Government Code sections 12926, *et seq.* (the "FEHA Claim"); (3) California's Disabled Persons Act, Civil Code sections 54, *et seq.* (the "CDPA Claim"), against Third and Mission Associates, LLC ("TMA"), Related Management Company, L.P. ("RMP"), and The Related Companies, Inc. ("TRCI").[2]

On June 9, 2016, Plaintiffs filed a motion for leave to file a second amended complaint in *Holland I*, in which they moved to add Related as a defendant. (*Holland I*, Dkt. No. 93.) Plaintiffs subsequently withdrew that motion and filed this case. Plaintiffs now assert an FHAA Claim, a FEHA Claim, and a CDPA Claim against Related, and allege that Related should be held liable on the basis that the named defendants in *Holland I* are Related's alter-egos. (Compl. ¶¶ 8-14.)

The Court shall address additional facts as necessary in its analysis.

**A.  Applicable Legal Standards.**

Related moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss is proper under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a claim for relief will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

---

[1]  Defendants ask that the Court take judicial notice of the Complaint in *Holland I*. (Dkt. No. 13-1, Request for Judicial Notice.) The Court GRANTS that request.

[2]  Plaintiffs have dismissed TRCI from *Holland I*, and the Court granted summary judgment in favor of the defendants on Plaintiffs claim for violations of California's Unruh Civil Rights Act.

2

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.       Plaintiffs' Allegations Are Not Sufficient to Allege Alter-Ego Liability.**

Plaintiffs do not seek to hold Related directly liable for the alleged discriminatory acts taken by TMA and RMP. Rather, Plaintiffs argue Related is vicariously liable. In general, "corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (citing *United States v. Bestfoods,* 524 U.S. 51, 61 (1998)); *accord Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). However, "in certain limited circumstances, the veil separating affiliated entities may also be pierced to impute liability from one entity to another." *Ranza*, 793 F.3d at 1072. In this case, Plaintiffs seek to hold Related liable on a theory of alter-ego liability. Related argues the facts in the Complaint are insufficient to establish that it may be treated as the alter-ego of TMA or RMC.

In order to allege facts "[t]o satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist, and (2) that failure to disregard their separate entities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073 (internal quotations, brackets and citations omitted); *see also Sonora Diamond*, 83 Cal. App. 4th at 538 ("In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.").

3

In order to satisfy the "unity of interest" prong, a plaintiff must show "that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir. 2001) (internal quotation marks omitted). The Court may consider the following factors to determine if a plaintiff alleges sufficient facts to make a prima facie showing of unity of interest, although "no single factor is dispositive": "'commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees,' 'use of one as a mere shell or conduit for the affairs of the other,' 'inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.'" *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103-BLF, 2015 WL 4593911, at *2 (quoting *Sonora Diamond*, 83 Cal. App. 4th at 538-39). Some courts, including this Court, have found that pleading at least two of the factors in support of a unity of interest will satisfy that element. *See, e.g., Daewoo Electronics America, Inc. v. Opta, Inc.*, No. 13-cv-1247-JSW, 2013 WL 3877596, at 5 (N.D. Cal. July 25, 2013) (citing *Pacific Maritime Freight, Inc. v. Foster*, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010)).

With regard to the second prong, "when the corporate form is used to penetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation[.]" *Sonora Diamond*, 83 Cal. App. 4th at 538; *accord Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1998) (internal quotation marks and citations omitted) ("[T]he kind of inequitable result that makes alter ego liability appropriate is an abuse of the corporate form, such as under-capitalization or misrepresentation of the corporate form to creditors."). As explained by the court in *Sonora Diamond*, "[t]he alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." *Sonora Diamond*, 83 Cal. App. 4th at 538. "Difficulty in enforcing a judgment or collecting a debt does not satisfy" the second prong of the alter-ego test. *Id.* at 539.

Finally, conclusory allegations of alter ego status are insufficient. *See, e.g, Gerritsen v.*

4

*Warner Bros. Entertainment, Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015); *NetApp, Inc. v. Nimble Storage, Inc.*, No. 13-cv-05058-LHK (HRL), 2015 WL 400251, at * 5 (N.D. Cal. Jan. 29, 2015). Rather, the plaintiff "must allege specific *facts* supporting both of the necessary elements." *Gerritsen,* 116 F. Supp. 3d at 1136 (emphasis added).

### 1. Plaintiffs Have Not Alleged Facts to show that TMA is Related's Alter-Ego.

The Ninth Circuit has made clear that to satisfy the unity of interest prong, the facts must show "pervasive control over the subsidiary, such as when a parent corporation 'dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day to day operation.'" *Ranza*, 793 F.3d at 1073 (quoting *Unocal*, 248 F.3d at 926). For example, in the *Payoda* case, the plaintiff alleged that the parent company had the same leadership as its subsidiary, the two entities held themselves out to the public as the same entity, shared headquarters, and commingled assets, "including their facilities, finances, website, email address, phone number, employees and customers." 2015 WL 4593911 at *1 (internal quotations and citations omitted). The court found that these allegations, "without more factual specificity" were not sufficient to allege the requisite unity of interest between the parent and the subsidiary. *Id.*, 2015 WL 4593911 at *3.

Here, Plaintiffs allege that TMA has no officers or employees and assert that it is "operated and controlled by its Owner Representatives," who are, respectively, the President and a former executive Vice-President of Related. (Compl. ¶ 8.) The allegation that these individuals operate and control TMA is a mere conclusory allegation. *Cf. NetApp, Inc.*, 2015 WL 400251, at * 7 (N.D. Cal. Jan. 29, 2015) (finding allegation that defendant "has been controlling the business and daily operations" of alleged alter-ego entity to be "mere conclusory allegation"). Without more, the Court concludes these allegations are not sufficient. "Total ownership and shared management personnel are insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073. Plaintiffs do not allege any facts to suggest that TMA and Related co-mingle assets or fail to keep separate accounts. Although they allege that RMC is undercapitalized, they do not make the same allegation as to TMA. Plaintiffs also do not allege that Related and TMA fail to observe other corporate formalities. *See, e.g., Ranza*, 793 F.3d at 1074 (noting that evidence of

5

undercapitalization, failing to keep adequate records, or if parent freely transferred subsidiary's assets "would be signs of a sham corporate veil"). The Court concludes Plaintiffs have not alleged sufficient facts to show the requisite unity of interest between TMA and Related.

To satisfy the second prong, Plaintiffs allege that treating TMA as a separate entity "is a fiction and a gross injustice" and allege that to allow Related "to maintain a separate identity from its alter egos is a fraud upon the Court." (Compl. ¶ 13.) These are legal conclusions couched as fact and are insufficient to satisfy the second prong of the alter ego test. As noted, Plaintiffs have neither alleged that TMA is undercapitalized nor that it was left "undercapitalized in bad faith or with the intention of prejudicing creditors such that it would be inequitable to hold only the corporate defendant liable for its acts." *Hoang v. Vinh Phat Supermarket, Inc.*, No. 13-cv-724-WBS GGH, 2013 WL 4095042, at 14 (E.D. Cal. Aug. 13, 2013). Plaintiffs also do not allege exactly "what injustice" would result if the Court failed to disregard the corporate form. *See, e.g., Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1083-84 (N.D. Cal. 2011) (finding that plaintiffs had not alleged sufficient facts on second prong of alter ego test where they did not allege facts to show what injustice would result from failing to disregard the corporate form). The Court concludes Plaintiffs have not alleged sufficient facts to satisfy the second prong of the alter-ego test.

### 2. Plaintiffs Have Not Alleged Facts to show RMC is Related's Alter-Ego.

Plaintiffs have included more facts to support their alter-ego allegations against RMC. For example, Plaintiffs allege that Related owns 99% of RMC, but that fact alone would not be sufficient to establish alter ego liability. *Ranza*, 793 F.3d at 1073. Plaintiffs also allege that Related "forced" RMC to pay it "over $22,000,000 per year for unspecified services" and that Related "forced" RMC to take out a loan to pay for such services. (Compl. ¶ 10.)[3] Plaintiffs have not alleged facts to show whether Related issued the loan, although that is suggested by Plaintiffs'

---

[3] In their opposition, Plaintiffs argue that Related forced RMC "to take out a substantial loan to pay off its debt to" to Related. (Opp. Br. at 9:4-5.) That is not what is alleged in the Complaint. Plaintiffs also argue that Related forced TMC to hire RMC as its property manager without any competitive bids, without any way for TMC to renegotiate the contract or to fire RMC if appropriate. Again, those are not the facts alleged in the Complaint.

allegation that RMC could not have operated without loans from Related. (*Id.* ¶ 12.) The fact that Related may have issued loans to RMC, without more, is not sufficient to allege facts to show the requisite unity of interest. Plaintiffs have not alleged that the loan was interest free or that Related and RMC failed to properly document that loan. *See, e.g., Unocal*, 248 F.3d at 927 ("Evidence that a parent provides interest free loans without observing corporate formalities by documenting those loans with promissory notes supports a finding that the parent is the subsidiary's alter ego.").

Plaintiffs also allege that Related "forced" RMC to enter into contracts with other entities owned by Related "without seeking competitive bids." (Compl. ¶ 12.) However, "[a] parent corporation may be directly involved in financing and macro-management of its subsidiaries, however, without exposing itself to a charge that each subsidiary is merely its alter ego." *Unocal*, 248 F.3d at 927.

Plaintiffs argue that undercapitalization alone would be sufficient to establish alter ego liability, citing *Slottow v. v. American Casualty Co.*, 10 F.3d 655 (9th Cir. 1993). "[W]hen determining whether inadequate capitalization exists…, courts generally look to facts or allegations related to an entity's liabilities and assets." *NetApp, Inc*, 2015 WL 400251, at *7. For example, in the *Slottow* case, there was evidence that initial capitalization for the subsidiary entity was $500,000, which the court found was "woefully inadequate for a corporation that handled trust agreements of the magnitude" at issue in the case and there was evidence to show liabilities of approximately $10,000,000. *Id.* at 1360.

Here, Plaintiffs allege that RMC was "grossly undercapitalized." (Compl. ¶ 12.) Plaintiffs have not included any allegations about RMC's assets, so the Court cannot assess whether the fact that it carried debt is relevant to the analysis. *See, e.g., Nilsson, Robbins, Dalgrand, Berliner, Carson & Wurst v. Louisiana Hydrolec,* 854 F.2d 1538, 1543 (9th Cir. 1988) (evidence of undercapitalization showed that entity had no assets and most of its capitalization came from alter-ego defendant); *see also Hoang*, 2013 WL 4095042, at *14 (noting that "[u]ndercapitalization is a relative term" and finding plaintiffs allegations of undercapitalization "too vague").

The Court concludes that Plaintiffs have not alleged sufficient facts to show the requisite unity of interest between Related and RMC. In addition, for the reasons set forth above with

regard to TMA, the Court finds that Plaintiffs have not alleged facts to satisfy the second prong of the alter-ego test.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Related's motion to dismiss. However, the Court cannot say it would be futile to grant Plaintiffs leave to amend, and it shall give them one further opportunity to do so.[4] Plaintiffs may file an amended complaint by no later than September 30, 2016, and Related shall answer or otherwise respond within the time required by the Federal Rules of Civil Procedure. If Plaintiffs choose not to amend and seek to stand on the allegations in the existing Complaint, they shall file a notice to that effect by September 30, 2016. If Plaintiffs file such a notice, the Court will dismiss this case with prejudice and enter judgment.

**IT IS SO ORDERED.**

Dated: September 9, 2016

_____
JEFFREY S. WHITE
United States District Judge

---

[4] The Court recognizes that this is the first complaint filed in this action. However, Plaintiffs sought leave to amend the complaint in the *Holland I* case to include Related after having obtained discovery in that action.